Good morning. I'd like to reserve five minutes for rebuttal please. Sanjay Schmidt and I have the honor today of representing the appellant Leland Wheeler and I'm here with my co-counsel Joseph May. Just before you begin I believe that we had allocated 15 minutes on this so if you'll change the clock I don't want to deprive you of your time but I just wanted to check my records. I Now we can start all over. Thank you and 15 minutes for you as well. Good morning again. Sanjay Schmidt representing the appellant today along with my co-counsel Joseph May and again I just want to point out I'd like to reserve five minutes for rebuttal. The incident that gave rise to this suit is quite troubling. My client's biological mother Deborah Colbert called 911 and what only fairly can be characterized as a cry for help indicating that she had consumed a large amount of alcohol, had taken an unknown quantity of an unspecified pill and that she's feeling extremely distraught and suicidal and she expressed a clear desire to commit suicide. She related to the 911 operator that she would be wielding a bat and that it was her hope that by wielding this bat she could provoke the police officers that would respond to this call to shoot and kill her. Now the context of this call is important because defendant McGuire had responded to Ms. Colbert's residence eight days before the incident on April 13th of 2014 and effectuated a Welfare and Institutions Code section 5150 involuntary mental health hold. So Ms. Colbert's mental health disabilities were well known to the defendants. So defendants Bronte, McGuire and Wolfe responded to the apartment complex and Ms. Colbert's apartment was obtained a key from the apartment manager to gain access and instead of calling in mental health professionals and perhaps setting up a perimeter and attempting to de-escalate the situation and exploring alternatives other than lethal force, the officers obtained the key, opened the door and just as she had been a 911 operator, she would be. Ms. Colbert was wielding a bat and the two officers in the front, defendants McGuire and Wolfe, fired their weapons and fatally shot Ms. Colbert. It's notable that defendant Bronte had a taser which was available for use which was not used and would have been the ideal use for a taser in that situation. Nevertheless, Ms. Colbert passed away from her injuries the next day in the hospital on April 14th of 2014 and my client Leland Wheeler, the biological son of Ms. Colbert, never had an opportunity to say goodbye to his mom. Now as I he was put up for adoption at nine months old and he did maintain a close relationship with Ms. Colbert throughout a lot of his childhood and then when he became an adult the relationship persisted and became closer and more consistent and Ms. Colbert had a relationship with Mr. Wheeler's child, her reasons that we respectfully submit the district court's order dismissing this action under Rule 12b-6 should be reversed. First, the district court erred in applying California's survival statutes to bar Mr. Wheeler from pursuing Ms. Colbert's survivor section 1983 claims because her death was caused here by a violation of her constitutional rights. So precluding these claims is inconsistent with both the purpose and intent of section 1983. In our briefs we cite the article by Professor Steinglass explaining that the legislative history of section 1983 is very clear to provide a remedy for unconstitutional killings and this was reiterated in the recent Ninth Circuit case Chowdhury as well as numerous other opinions. Now, in 1978 the U.S. Supreme Court considered whether a state statute could be permitted to abate an action because as we know, as the court knows from the briefs, under section 1988a the court looks to state law as to whether an action survives unless that state law is inconsistent or would frustrate the purpose of federal law. And the court expressly recognized in Robertson that to prevent frustrations of the deterrence goals of section 1983, a state official contemplating a legal activity must always be prepared to face the prospect of a section 1983 action being filed against him. That's at page 592. And it's notable that the court in Robertson versus Wegman pointed out on page 594 of the opinion that its ruling was narrow and only applied to that scenario because in that situation the constitutional violation did not cause death. So that case involved what amounted to a malicious prosecution type of case against several government officials and the plaintiff passed away about, you know, four years into the litigation or so from unrelated causes. And the issue there was whether or not the personal representative could maintain the action, which was not permitted under Louisiana law. Roberts. Go ahead. I'm sorry. I hear there is no personal representative. You have a California statute that provides a mechanism for somebody like, you know, Mr. Wheeler, someone in his situation. There was no personal representative designated. Do you agree with that? That's correct, Your Honor. There hasn't been a personal representative that has been identified by opening a probate and going through that procedure yet. Why not? Why not? I mean, why would, you know, that you complain that the district court didn't grant any leave to men to bring in? What is it with the estate that there's no personal representative? Well, there was never a probate opened up in the estate. And Mr. Wheeler obviously prefers to pursue the survivor claims as the successor in interest because there's no other successor in interest available. However, we've been able to do that. But that also could possibly result in him having no ability to pursue this. So going back to the survivor, I mean, to the personal representative, I mean, I assume perhaps there are not much in terms of assets of the deceased, but is there anything that would prevent him from being the personal representative? There's nothing that would prevent him from acting as a personal representative. My understanding. And so we could have solved all of this if he'd been named as personal representative and then you wouldn't be here, at least on that issue, right? Well, on that issue, Your Honor, that is correct in the sense that Mr. Wheeler would be entitled to act as a personal representative to bring the survivor claims for Ms. Colbert. Now, that wouldn't address his personal claims, but it also would mean that he wouldn't really be the plaintiff in the sense of the same sense that he would be as acting as successor in interest because he would just be acting as a personal representative, but because he doesn't have a right to inherit under the laws of California based on the adoption, he would just be acting essentially as, you know, as a private individual. But if we look at the Ninth Circuit cases on these, when you go to a Federal statute like 1983, you do look to see what is the underlying State law. We often do that in 1983 on a lot of issues. And in particular, you then look to see, well, is the State law such that it would be wholly inconsistent with the Federal notion of recovery? And so I would appreciate your elaboration on that as to why it would be wholly inconsistent. And I think it's important to apply the California statute in this instance under 1983, as we've done in a number of other cases involving similar claims. Well, Judge McAllen, in response to that issue, the California law, if applied to this case, would cause this action to obey. And there's a strong public policy interest in having, number one, police shooting cases that result in death go forward. But it only causes it to abate because there is no personal representative. Well, that would be one reason. But the other reason would be that Mr. Wheeler is not entitled to bring the case under California law as the successor in interest. And we did plead in the complaint I would point out that a John Doe individual named as the to-be-identified personal representative, and that was done so that if it was determined that State law would preclude Mr. Wheeler from pursuing this action and he was barred, then the procedure could be done to obtain a personal representative. It would be too late for that. Is there any reason that in sort of a belt and suspenders notion of preserving your claims, he couldn't have been appointed the personal representative and then also file suit also in the name of a successor in interest? Well, Your Honor. Is there any procedural barrier to doing that? Well, from our perspective, when we got the case and we got involved in the case obviously you can't. Well, let me just why don't we start with either yes or no to that and then maybe we can go back and explain. I understand that it's not necessarily of your making, okay? I understand that. Okay. So with respect to that question, I guess the issue would be that that could present issues, but I believe, you know, in a theoretical sense, I think that that would be possible. The answer is that it would be possible to do that. I believe it would be possible. My general understanding is that it would be possible. But now the problem is you're some years down the road, and given the statute of limitations, I don't see how a successor could come in now. I mean, excuse me, a personal representative. Okay. Now, I think I need to save the rest of my time, but let me answer this question with respect to the personal representative. Well, Your Honor, we would submit that the interests of the statute of limitation have been satisfied by virtue of the complaint that's on file. The personal representative is identified in the complaint. There's no prejudice at all to the defendants, and I mean, there's no reason why that shouldn't relate back. The successor and interest declaration was filed by Mr. Wheeler with the complaint, and there's really no reason why, if this court were to permit, leave to amend the complaint to add Mr. Wheeler as personal representative, there's no reason why the defendants would be prejudiced, and that should not be barred by the statute of limitations. And I would submit the defendants haven't set forth any authority that would establish that that would be barred by the statute of limitations. Okay. Thank you. Thank you. Good morning, Your Honors. My name is John Heberlin, and I represent the Appellee Police Officers, as well as the City of Santa Clara. Your Honors, in the context of lawsuits involving damages being claimed as a result of someone's death, the law appropriately requires that a plaintiff have the legal capacity to assert claims on behalf of a decedent. In this case, Mr. Wheeler lacked and lacks the legal capacity to bring claims for his biological mother's death due to his adoption to other parents when he was an infant. The district court, therefore, appropriately dismissed all of Mr. Wheeler's claims. Your Honors, we know from the U.S. Supreme Court in Robertson v. Wegman that there is no rule of absolute survivorship in Section 1983 cases. One of the questions to my friend, Mr. Schmidt, was about that issue, and his response was there's a policy in preventing police actions in going forward. Well, the same argument was made by the plaintiff in Robertson. You can always argue that a case should be able to proceed for any given plaintiff. But there must be some reason not to enforce the state's survival statute. And those two reasons the Robertson course gave for potentially not enforcing the Louisiana survivorship statute in that case were, one, compensation to the victims of a civil rights violation, and, two, deterrence. And, Your Honors, in this case, neither one of those policies would apply if this court were to follow California law, CCP Section 377.30. On the issue of compensating victims, as the court said in Robertson, the goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of an estate. And think about the nature of survival claims. These claims are not personal to the plaintiff. They're claims that someone is saying that they have such a degree of relation to the decedent that they should be able to come into court and be heard before death. And so the law very appropriately, and California very appropriately, requires that you have some relation, some legal relation to that decedent. And secondly, on the issue of deterrence, Your Honors, no California police officer is ever going to be affected in their day-to-day operation by the application of 377.30. No California police officer is ever going to be able to know the ins and outs of the family tree of every person they encounter. And they're never going to be able to predict that rare occasion that we find ourselves in today when a decedent unfortunately leaves no heirs. Now, in this case, the allegedly unconstitutional conduct, of course, caused the decedent's death. So how does Robertson apply?  Yeah. Thank you, Your Honor. Robertson expressly left that question open, but the answer doesn't change. Because the mere fact that the incident, the alleged violation caused death is not going to serve that deterrence effect. CCP section 377.30 opens up a number of categories of classes of people who can bring a survivor action, including a personal representative, including a decedent. It probably depends on how you define the deterrence, because if no suit can go forward, then, of course, there's not going to be any deterrent effect. If a suit could go forward, then the issue of the officer's conduct, of course, would be in play. And that fact would ultimately play out, as 1983 suits do, that the prospect of damages may well, of course, be a deterrent to the conduct. Well, but I don't think the you can analyze it as in terms of could any particular suit go forward. Of course, you know, you can always make the argument that in each and every case, we should just let survivorship rule. But I think you have to analyze the issue in the abstract, and that is, is application of this survivorship statute, California survivorship statute, going to have not just a meaningful effect, but any effect on a police officer's day-to-day duties. They're just never going to be able to predict this anomaly. And the reality is, in use-of-force decisions, and especially in the very difficult decision of whether to discharge a firearm, the last thing on any California police officer's mind is going to be that subject's family tree and their heirs. They're thinking on the spot because there's a threat being posed to them or someone nearby, and they have to make these decisions on the spot. So this is this is Yeah, I mean, I think you're talking past me, because the decision they're making on the spot is whether to use force. And I agree with you, they're not wondering if that person is a potential blood relation, but it's the decision and the fact that they may be subject to a 1983 suit in the abstract, that is the deterrent effect that I think the courts are talking about. But it may be that it wouldn't matter in any event in your argument. Well, I think that same argument was made in Robertson, that that Mr. Robertson should his heir should have the opportunity to continue with that claim. And we haven't gotten to the point since Robertson where all cases survive. I mean, this Court has heard Moreland v. Las Vegas Metro, Hayes v. County of San Diego. There are there have been subsequent cases where these claims have not survived. And we again, we don't have a rule of absolute survivorship. And again, I just think this is such a rare case. It's an unfortunate situation for Mr. Wheeler. But I think this is we're litigating the rare, rare exception. And that in and of itself is not a reason to not defer to California law on this topic. When you address the proposed amendment that the judge found futile, but which now your colleague here says, well, there's a possibility that it could be revived because it was in the abstract named in the original complaint. Your Honors, they waited till literally the last day of the two-year statute to file the action. They did not, they have never taken steps to appoint a personal representative. That was clear from their reply brief. It's clear from the argument this morning. They did mention a quote-unquote John Doe plaintiff in their complaint. I frankly had, was unable to find law that supports that. We obviously know about Doe defendants and there's various rules about whether cases relate back in terms of Doe defendants. So frankly, they just didn't take the steps to perfect that. And we cited some case authorities in our reply brief which suggests that new actions in this capacity do not relate back. In the Moreland case by this Court, 159 Fed 3rd at 370, the Court remarked, quote, at no time in the action before the district court did the appellants argue or offer any evidence that they had been formally appointed as representatives of Douglas' estate. Your Honors. So your view is that the time passed a long time ago. Yes. And if somebody came forward now miraculously as a personal representative, it wouldn't matter. Yes. I'm representing three police officers who have been accused of violating someone's civil rights, and the four-year anniversary of this unfortunate event is Friday. And my officers, my clients, are entitled to the two-year statute of limitations and should not have to wait around for the plaintiffs to perfect their right to a personal representative. So do I understand your argument in part to be that because the survival statute permits personal representatives or successors to bring an action, the statutory scheme is not inconsistent with 1983, that there would be a remedy here if the statute, survival statute, had appropriately been pursued here? Correct, Your Honor. In fact, that's one step beyond what was the case in Robertson. And so, yes, we believe in addition to all of the classes of family members, and again, a distant cousin would have been, would have sufficed as a successor in interest so long as there was no one closer to the deceased. So, yes, California validly, reasonably gives a number of categories of people the right to bring this action. And this is not like chowdery and some of the cases where damages have been limited. This is a case where the opportunity to bring a claim is out there. You just have to be the right person. In a case like chowdery, where if you negate pain and suffering damages for every single fatal Section 1983 case, I can understand that that may have some effect on law enforcement operations. And I understand why this Court did what it did. Could you address the Fourteenth Amendment claim here? Yes, Your Honor. The Fourteenth Amendment liberty interest that is being asserted here, and I think we have to start from the framework that the plaintiff bears the burden of proof in all claims, including standing. That was told to us by the Supreme Court in Lujan versus Defenders of Wildlife. It was really incumbent upon them to come forward with a case or an authority that says that someone in his position has a direct Fourteenth Amendment liberty interest in the death of his biological mother. Now, this Court in other contexts has considered other family relationships, things like siblings in Ward versus San Jose, and concluded that siblings were not close enough to satisfy that Fourteenth Amendment liberty interest. And the Court adopted, this Court adopted in Ward, the reasoning of the Seventh Circuit in Bell versus City of Milwaukee. And it said, quote, obviously many human relationships stem from the emotional attachments that derive from the intimacy of daily association. But we are unwilling to attach constitutional significance to such attachments. We all can agree that various family members often feel close enough, feel very close to one another. But in Ward and in Bell, what they called daily association relationships were not enough to justify the Court finding a liberty interest. Is it your argument that the mere fact that this child, Mr. Wheeler, was put up for adoption and the relationship with the mother, biological parent, was legally severed, does not foreclose the possibility of a Fourteenth Amendment claim? In other words, could you imagine a situation where the relationship between the child and the biological parent was close enough, even though there had been this severance, such that there would be a viable Fourteenth Amendment claim? I certainly would agree, especially in this day and age of adoptees sort of locating their natural birth parents, that there's certainly probably more of that happening. And I'm not saying that someone in Mr. Wheeler's situation can't have a very close personal relationship with his natural mother. Couldn't he have a parental relationship with his natural mother that is a basis for standing, not irrespective of the legal adoption? My view is no, because there's no authority providing for that. And I think in the end, while any one particular parent-child, natural parent-adopted child situation, there could be situations where they reunite and become very close. Until we have an authority telling us that's the case, I don't think that they can assert a Fourteenth Amendment right here. And it seems that you're focusing on the language in the cases that refer to daily intimate relationship or dependency relationship of the child upon the parent, and you're saying that that's not what we have here. My point is that wasn't enough for this Court in Ward to say that brothers and sisters should have that type of a liberty interest. And so I think as the U.S. Supreme Court offered in the Washington v. Glucksberg case we don't really know what the nature of the relationship was. We just have a complaint. We don't really know if they had a daily intimate dependent relationship. They could have. I mean, the woman was mentally ill. He could have been providing for her needs. But how would we lay down a rule that would provide when people in that situation get to make a civil rights claim? How would we articulate the level of closeness, the degree of love and affection? I mean, that you're really asking, you know, what's the limiting principle here and where does it stop and end, which I think is a good question, because we don't have any basis. One question I had is the Supreme Court had said in Larravie-Robinson something to the effect that the mere existence of a biological link doesn't merit, you know, equivalent constitutional protection when you're talking about the parental relationship. So I'm just really wondering what do you think the Supreme Court meant there? If biological alone is not sufficient, but then you can add to it some other kind of parental relationship, that's in a way what they're arguing, isn't it? Well, I think that, again, I don't know that there's a feasible way to lay out the rule. If we're going to expand this class of plaintiffs, which for all the reasons I've talked about before I don't think we should do, not to mention deference to State law, and as the Supreme Court said in Washington v. Glucksburg, we must exercise the utmost care in extending these rights. And the cite for there is 521 U.S. 721. But I just question how we can articulate a rule that would – and how we could litigate the closeness of a relationship in order to achieve standing. I mean, it's a big deal to make a civil rights claim. It's a big deal to say that somebody has violated your civil rights. And California has justifiably said, okay, you can do it, but you've got to meet the certain criterion. And I just am concerned that we're going to open this up to other plaintiffs who have a more tangential relationship, and I just question how a rule could be articulated. And I think the Court should exercise restraint in that regard. Thank you. Thank you. Thank you. Excuse me. First, Your Honor, I'd like to briefly be heard on the personal representative issue. Just candidly, my co-counsel and I were retained on this action at the very 11th hour, and so we did what we could do with the time we had by naming the John Doe. And we do submit that that preserved the statute of limitation, and there's no prejudice at all to the defendants. And the cases cited by the defendants are all distinguishable. In the cases cited in the section of their brief, which is towards the end, around pages 25 and 26, addressing the John Doe issue, nearly all those cases involved plaintiffs who completely failed, despite being given leave and being given opportunities to perfect their status as a personal representative by filing the requisite declaration. And in that case, I can assure this Court that wouldn't happen if leave was granted. How brief? How long has it been between the complaint and the argument today? Between the complaint and the argument, there's been a major delay, and there's We concede that, Your Honor. However, we had no reason to name the personal representative before, because we had, I mean, the statute of limitation had already run. We had named the John Doe, and our position was that Mr. Wheeler should be granted the standing. And obviously, the fallback position, if that argument is denied, would be to go and go through the procedure and briefly have the personal representative appointed. Now, on the 14th Amendment issue, I think that the Court's questions on that were apt, because there's no authority cited whatsoever by defense counsel for the idea that the adoption severed Mr. Wheeler's liberty interest. Now, the law is very clear, and there's no need for any kind of a new rule to be announced regarding the 14th Amendment claim, because parents and children have a recognized legally cognizable liberty interest. And there's absolutely no authority for the idea that that liberty interest is a creature of state law, which that is, in effect, what the defendant's argument is, because their contention is that the adoption severed that liberty interest. But the only interest that was severed was that legal relationship that Ms. Colbert, who was disabled, was not able to provide in terms of the way of financial support. And so she did the responsible thing of putting Mr. Wheeler up for adoption, because she knew with her disabilities, she wasn't able to care for his essential needs. But that didn't sever the emotional attachment, the love, the companionship, and all the other And Mr. Wheeler did have the relationship as a child and also as an adult, and the district courts ordered her to be adopted. The thrust of your brief, it seems to be that the relationship was forged when Mr. Wheeler reached majority. I mean, that's the thrust of your argument as briefed. Well, Your Honor, the complaint does point out that Mr. Wheeler had a close relationship with her for part of his childhood. And then the relationship obviously blossomed when he was an adult. But it was what is common these days, which was an open adoption. Excuse me. So he was aware of Ms. Colbert. He didn't discover her later after becoming an adult. He did have a relationship with her. We have a whole file full of letters and other correspondence between the two. Obviously, that could all be fleshed out in an evidentiary hearing. But I would submit there's no need for any kind of an ad hoc analysis here with respect to the 14th Amendment claim, because the rule is clear. What is your best, what is your home run 14th Amendment case? Well, Your Honor, there's no case that says that an adoption severs that liberty interest. So there's numerous cases cited in both the opening brief and the answering brief that recognize the 14th Amendment liberty interest for parents and children. So I would submit that by finding that that liberty interest was severed, that would actually be a new rule that would be announced, which there's no authority. If there was a case saying that that liberty interest was severed, I can assure you that the defendants would have cited it. Thank you. Thank you. Thank both counsel for the argument today. Wheeler v. City of Santa Clara is submitted. And we'll hear argument now in AMA Multimedia v. Sagan.
judges: McKeown, Wardlaw, Katzmann